(No. 4847.   January 31, 1928.)

MINNIE McCLELLAN, Appellant, *v.* GEO. P. DAVIS
and ADA DAVIS, Husband and Wife, and CHANCEY
T. DORAMEUS, Respondents.

[263 Pac. 1002.]

MORTGAGES—NOTICE OF TRANSFER OF NOTES—EVIDENCE—TENDER—TO
WHOM—PLACE—NECESSITY OF KEEPING GOOD—BANKS—INSOLVENCY
—OFFSET—ASSIGNMENT OF CLAIM—APPEAL AND ERROR—SUFFI-
CIENCY OF SPECIFICATION OF ERRORS.

1. In action to foreclose real estate mortgage, evidence *held*
not to support finding that mortgagor tendering payment of note
to mortgagee bank, which bank refused to accept because note was
not at bank, did not have knowledge that bank had sold and
transferred notes, secured by mortgage, since facts disclosed were
notice to mortgagor that someone other than bank had possession
of or an interest in note, and this notice was sufficient to put him
on inquiry as to continuance of bank's title.

2. Where findings, conclusions and judgment are such that
mere reading of them argues that conclusions and judgment are
contrary to law, and citations in argument in further portions
of brief support specifications, they cannot be deemed so insuf-
ficient, indefinite or general under supreme court rule 40 as to
call for technical disregard thereof.

3. Where finding of fact was found erroneous and patently
to large degree must have contributed to error made plain in
conclusions, it became necessary to pass on conclusions based
thereon, though specifications of error were technically too general
under supreme court rule 40.

4. Where mortgagee bank sold notes secured by mortgage
without mortgagor's knowledge, and mortgagor deposited money in
bank to pay note after bank had previously refused payment be-
cause it did not have note, such tender and deposit after refusal
did not constitute payment either on theory that bank was buyer's
agent or on theory that bank was principal.

5. Mortgagor depositing money in mortgagee bank to pay mort-
gage note, not knowing of bank's assignment of note, could not
have offset his deposit against note under Laws 1921, chap. 42,
sec. 13, after failure of the bank, and thus acquired no such
defense or offset by leaving money on deposit in ignorance of
assignment.

6. Where mortgagor tendering payment of mortgage note to mortgagee bank which had assigned note without mortgagor's knowledge did not keep tender good, assignee of note was entitled to judgment on note for principal, interest and accruing costs, under C. S., sec. 6635, relating to defenses in cases of assignment.

7. Mortgagor's tender to plaintiff of assignment of claim against mortgagee bank for deposit he had made in bank to pay mortgage note in ignorance of bank's sale of note to plaintiff was not payment and had no effect whatever.

8. One must ordinarily tender payment to one entitled or with authority to accept payment, or to satisfy mortgage in order to discharge lien by tender.

9. As regards tender, the place named for payment of note is ordinarily construed as matter of convenience.

10. As one is under no obligation to leave a note at appointed place after maturity, one who tenders payment late and finds note not at place of payment should seek out payee to make payments.

11. Where simultaneously with mortgagor's tender of payment of note to mortgagee bank after maturity of note mortgagor received notice that bank assigning note without mortgagor's knowledge did not have note and payment was for that reason refused, such tender being made to one who had no authority to receive money and assignee having, by default, already acquired right to foreclose mortgage, mortgagor did not acquire, within intent of C. S., sec. 6635, as a defense, discharge of mortgage lien, and assignee was entitled to foreclosure.

Publisher's Note.

6. Necessity of keeping tender good in equity, see notes in 12 A. L. R. 938; 26 R. C. L. 643.

8. See 26 R. C. L. 631.

10. Duty of debtor to seek creditor for purpose of making tender, see note in 86 Am. Dec. 520. See, also, 26 R. C. L. 634.

11. Sufficiency of payment of note at place payable to one not in possession thereof, see notes in 14 Ann. Cas. 879; 21 L. R. A., N. S., 52. See, also, 3 R. C. L. 1288; 21 R. C. L. 23.

See Appeal and Error, 3 C. J., sec. 1588, p. 1412, n. 54; sec. 1589, p. 1418, n. 93 New.

Banks and Banking, 7 C. J., sec. 350, p. 652, n. 80.

Interest, 33 C. J., sec. 146, p. 241, n. 20.

Mortgages, 41 C. J., sec. 923, p. 798, n. 47; sec. 925, p. 798, n. 52; 42 C. J., sec. 1677, p. 117, n. 62.

Tender, 38 Cyc., p. 150, n. 43, 44, p. 158, n. 15.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to foreclose real estate mortgage. Judgment for defendants. *Reversed and remanded.*

Norris & Sutton, for Appellant.

A maker of a note is not discharged by paying a note at a particular bank at which the note is payable, where said bank has neither the possession thereof nor authority to collect it. (*State Bank v. J. J. Hyatt & Co.,* 75 Ark. 170, 112 Am. St. 50, 5 Ann. Cas. 296, 86 S. W. 1002.)

Where notes are payable to a particular bank and the maker deposits funds with the bank to meet such paper at maturity, the maker is still liable, notwithstanding the funds are lost through a subsequent failure of the bank. (*Adams v. Hackensack Imp. Commission,* 44 N. J. L. 638.)

Payment of a note must be made to the holder in possession of the note or to his authorized agent. (Joyce on Defenses to Commercial Paper, sec. 977.)

It is not sufficient to show that the tender was made at the place agreed upon. It must also be shown that the tender was kept good. (*Bissell v. Heyward,* 96 U. S. 580, 587, 24 L. ed. 678; *Wolff v. Canadian Pac. R. R. Co.,* 89 Cal. 332, 26 Pac. 825; *Summerson v. Hicks,* 134 Pa. 566; *Burlock v. Cross,* 16 Colo. 162, 26 Pac. 142.)

Sullivan & Sullivan, for Respondents.

That Assignment of Error No. 2 does not comply with rule 40 of this court, in that, it is insufficient, indefinite and too general. (*Morton Realty Co. v. Big Bend Irr. & Min. Co.,* 37 Ida. 311, 218 Pac. 433; *Hill v. Porter,* 38 Ida. 574, 223 Pac. 538; *Bain v. Olsen,* 39 Ida. 170, 226 Pac. 668.)

As to tender to mortgagee by mortgagor, without notice of assignment, we cite the following: ''So a tender to a mortgagee is good against his assignee, if made by the mort-

gagor without notice of the assignment." (26 R. C. L. 631.)

"A tender to a mortgagee of the amount due is good against his assignee, if made by the mortgagor without notice of the assignment." (*Gunby v. Ingram,* 57 Wash. 97, 106 Pac. 495, 36 L. R. A., N. S., 232.)

If the action is to foreclose a lien, then a tender has the effect of extinguishing the lien and it is not required that the tender be kept good. (*Kelley v. Clark,* 23 Ida. 1, Ann. Cas. 1914C, 665, 129 Pac. 921; 26 R. C. L. 644; 19 R. C. L. 447; 38 Cyc. 159, also, 172; 21 Ency. Pl. & Pr. 573; 20 Am. & Eng. Ency. of Law, 1063; 12 A. L. R. 950, note; *Boise Lumber Co. v. Independent School Dist.,* 36 Ida. 778, 214 Pac. 143.)

"Originally a tender need not be kept good when it appears that it will not be accepted." (26 R. C. L. 643.)

"Actual tender of the money is dispensed with if the debtor is ready and willing to pay and about to produce it, but is prevented by the creditor, declaring he will not receive it." (*McCalley v. Otey,* 99 Ala. 584, 42 Am. St. 87, 12 So. 406.)

TAYLOR, J.—The defendants Davis and wife gave three non-negotiable notes, payable in one, two and three years, to the Fruitland State Bank, at the bank, and secured them by a real estate mortgage to the bank. In April, 1920, for value, the two last-maturing notes were sold and delivered to plaintiff, without knowledge or notice to defendants. This action is brought upon the last note due, and to foreclose the mortgage. The plurality of defendants is immaterial, and references will be to defendant Davis, the husband.

The defendant alleged as an affirmative defense, and so far as material here the court found, in effect, that the first two notes and interest upon the third to November 1, 1921, were paid at the bank by deposits and checks delivered to the cashier, and the proceeds belonging to plaintiff paid to

her by the bank; that prior to maturity of the third note, at the suggestion of the cashier and with the knowledge of the bank, defendant applied to an insurance company for a loan to pay this note, and executed to it a mortgage to secure such loan; that upon November 9, 1922, defendant received a check from the insurance company for $1,466.86, and deposited it in the bank for the purpose of paying this third note; that upon November 9th and 10th, he had on deposit in the bank $1,540.25 for the purpose of paying this note, of which the bank had full knowledge; that he went to the bank and stated to it that he was ready and willing to pay his note held by the bank, and offered to draw his check on the bank, payable to the bank, in full payment of the note and interest due, which offer was refused; that upon November 16th, he had on deposit $970.31, for the purpose of paying this note, of all of which the bank had full knowledge; and that while the bank was open and doing business he again went to the bank and stated to its proper officers that he desired then to pay his note in favor of the bank, and offered and tendered to the bank a further sum for deposit sufficient to make his credit in the bank a sufficient sum to pay the note and interest, and offered to turn over to the bank and permit it to take the $970.31 already on deposit and sufficient additional money offered for further deposit to pay the note in full, and offered and tendered to the bank his check drawn on the bank in favor of the bank in full payment of the note and interest, but the bank refused to accept his offers and check; that none of these offers were refused on the ground that they did not constitute legal tender; that after this tender on the 16th of November, the bank, being insolvent, closed its doors; "That at no time prior to the closing of said bank did the plaintiff or said bank or anyone advise or notify said defendants, or either of them, and the said defendants had no knowledge, that said bank had sold and transferred said two notes to said plaintiff, or that said plaintiff was the owner and holder thereof"; that after the bank closed,

plaintiff notified defendant that she was the owner and holder of the note; that defendant then and prior to this action offered to assign to plaintiff his claim against the bank of $970.31, and to pay her in cash sufficient in addition to $970.31 to pay principal and interest upon the note to the date the bank closed; that defendant, about January 15, 1923, paid plaintiff $80, but without waiving any rights, benefit or advantage by reason of the tenders made, leaving a balance of $33.29 due plaintiff.

From the foregoing findings, the court drew conclusions of law that the defendants had the right to ''make payment or tender of payment . . . . to the . . . . bank''; that the tenders found to have been made ''were valid and legal tenders, and for the full amount due and owing on the note''; ''that by reason of the tenders as aforesaid, and the refusals thereof, . . . . the lien of said mortgage . . . . is discharged and extinguished . . . . and plaintiff is . . . . not entitled to foreclose said mortgage''; ''that . . . . plaintiff is not entitled to any interest on the note,'' or to recover any attorney's fees; and ''That plaintiff be subrogated to all the rights and claim of said defendant Geo. P. Davis in and to said sum of $970.31 on deposit in said Fruitland State Bank to the credit of said Geo. P. Davis at the time of the closing of said Fruitland State Bank as aforesaid, and the plaintiff is entitled to an assignment thereof from said defendant Geo. P. Davis, and is also entitled to have paid to her by said defendants Geo. P. Davis and Ada Davis the sum of $33.29, being the amount mentioned in the findings herein''; and that defendants are entitled to judgment for their costs.

The judgment in accordance with these conclusions denied foreclosure, and directed that the defendant Davis, within ten days, deposit with the clerk of court an assignment of his claim against the bank, and the sum of $33.29 found still due, the clerk to deliver this assignment and money to plaintiff, and that the defendants recover their costs. The appeal is from the judgment.

[1]  The appellant assigns the following finding as error for the reason that it is contrary to and not supported by the evidence, to wit:

"That at no time prior to the closing of said bank did the plaintiff or said bank or anyone advise or notify said defendants, or either of them, and the said defendants had no knowledge, that said bank had sold and transferred said two notes to said plaintiff, or that said plaintiff was the owner and holder thereof."

The material portion of the finding is that "prior to the closing of said bank . . . . defendants had no knowledge that said bank had sold and transferred said two notes." This finding is not supported by, and is contrary to, the evidence. Conceding, as contended by respondent, that there is a conflict between the evidence of Gardner, cashier of the bank, and that of Davis, as to whether Gardner had told him that the bank had sold this note to plaintiff, or that this plaintiff owned the note, yet the testimony of Davis shows that before depositing the money, he was distinctly told that the officer to whom he made the tender could not find the note in the bank, knew nothing about it, and for that reason would not accept payment; that the next day he was told practically the same thing by another officer, and that he must see Gardner, the cashier; that when, on the 16th, he did see Gardner, he was told that the note was not in the bank, that the bank did not have the note, and for this reason the bank could not and would not accept payment, and the tender was refused. While the bank had knowledge that defendant was securing this money to pay his note, defendant was distinctly told, before depositing the money, that the note was not at the bank, and that the officer so telling him could not and would not accept the payment. In spite of this, and that he was told that he must see the cashier, Gardner, who was not then present, defendant deposited the proceeds of the new loan.

The facts disclosed were notice to defendant that someone other than the bank had possession of, or an interest in, the note. The note had been at the bank for payment on

the date due, and was taken out by plaintiff about November 7th, and the bank had no authority to receive payment, or agency for the plaintiff. This notice was sufficient to put him upon inquiry as to the continuance of the bank's title. He had thereby such notice as would enable him, if he made the requisite inquiry, to ascertain the truth, and having omitted to do so, he is not protected thereafter in dealing with the assignor bank as to the note or payment.

[2, 3] Appellant specifies as further error:

"II. That the court erred in making its conclusions of law and each and every one of them. For the reason that said conclusions of law are, and each of them is, against the law and the evidence.

"III. That the court erred in making and entering its judgment debarring the plaintiff from foreclosing her mortgage, and discharging the lands therein described from the lien of said mortgage, and subrogating the plaintiff to the rights and claims of the defendant Geo. P. Davis against the Fruitland State Bank, and in awarding costs to the defendants."

Respondent contends that these specifications of error are "insufficient, indefinite, and too general" to comply with rule 40 of this court, which requires that "the brief of the appellant shall also contain a distinct enumeration of the several errors relied on." Where, as here, the findings, conclusions and judgment are such that a mere reading of them argues that the conclusions and judgment are contrary to law, and citations and argument in the further portions of the brief support the specifications, they cannot be deemed so insufficient, indefinite or general as to call for a technical disregard thereof. For the added reason that the foregoing finding of fact discussed has been found erroneous, and patently to a large decree must have contributed to the error made plain in the conclusions, it becomes necessary to pass upon the conclusions based thereon. To dismiss these specifications upon such technical ground would work a plain injustice upon plaintiff. Nor has respondent been misled thereby, for counsel nevertheless pro-

ceed to discuss all possible phases of the points involved, under subheadings of their own choosing.

The conclusions of law establish the following results, and the judgment is in accord therewith:

(1) That defendant had a right to make payment, or tender of payment, to the bank at the bank.

(2) That the tenders were valid and legal tenders.

(3) That thereby the lien of the mortgage was discharged.

(4) That by reason of the tenders, plaintiff is not entitled to any interest upon the note subsequent to the date of the last tender to the bank, November 16, 1922, or

(5) Any attorney's fees, and

(6) Must pay defendant's costs, and

(7) Must take an assignment of the claim for $970.31 as payment of that amount, and receive $33.29 from defendant by its payment by defendant to the clerk for plaintiff.

[4] Assuming that defendant had a right to make the tender at the bank, the conclusions and judgment proceed upon the erroneous theory that he had a right to make, and did by the deposit make, payment of $970.31. This is plainly erroneous, and contrary to law. When he tendered the money, it was refused. He did not make the deposit until payment was once refused. Even assuming the bank was plaintiff's agent, the agent refused to receive the money. Assuming it to be the principal, it made the same refusal. The tender and the deposit after refusal did not constitute payment upon any theory.

[5] If the law as it stood at the time had been such that the defendant, relying upon the belief that the bank was the owner of the note, had, with knowledge of the bank that it was borrowed and deposited for that purpose, left the money on deposit, and upon the failure could have offset his deposit against his note, he might have acquired a defense or offset before notice of the assignment; but under Sess. Laws 1921, chap. 42, sec. 13, he could not have offset his deposit against his note after the failure of the bank (*Brown v. Porter,* 42 Ida. 295, 245 Pac. 398; *First National Bank v. Reins,* 42 Ida. 720, 248 Pac. 9), and thus

acquired no such defense or offset by leaving the money on deposit in ignorance of the assignment.

[6] We will discuss later the effect upon the mortgage. Even assuming that the tender discharged the lien of the mortgage, it did not pay the note. It had no effect upon the note, except to stop future interest and accruing costs. But to accomplish this, the tender must have been kept good, and on defendant's failure to keep the tender good, plaintiff was at least entitled to judgment on the note for principal, interest and accruing costs. (38 Cyc., p. 158; *Machold v. Farnan*, 20 Ida. 80, 117 Pac. 408.)

[7] The finding that after the bank closed, defendant tendered an assignment of this claim against the bank is of no import whatever. If the tender and deposit of the money before the failure of the bank were not payment, the tender of an assignment afterwards had no effect whatever. If the tender and deposit were payment, then defendant had nothing to assign after the failure. The bank refused the money, and defendant could not deposit it at the risk of plaintiff, or thus force an agency, or the effect of an agency, upon the bank and plaintiff which did not exist, and which the bank refused to exercise. (*State Nat. Bank v. J. J. Hyatt & Co.*, 75 Ark. 170, 112 Am. St. 50, 5 Ann. Cas. 2964, 86 S. W. 1002.)

There remains for determination but one question: the effect of the tender upon the security. Respondent contends that under C. S., sec. 6635, he is entitled to any defense existing at the time of, or before, notice of the assignment, and that tender after default should be given the effect of a defense stopping interest, accruing costs, attorney's fees, and even that of discharging the mortgage lien. The courts are not uniform upon the effect of a tender upon the security. In those jurisdictions in which a mortgage, as under the common law, is deemed to convey title, a tender after maturity does not discharge the lien, and a tender even at maturity must be kept good in some of those jurisdictions where action to relieve from the effect of the lien

must be affirmative action on the part of the mortgagor. In those states in which a mortgage is deemed to convey no title, the courts are not in harmony, however, as to the effect of a tender after maturity. The courts of New York early adopted the position that the lien was thereby discharged. (*Kortright v. Cady,* 21 N. Y. 343, 78 Am. Dec. 145.) Michigan courts have followed this rule. (2 Jones on Mortgages, 7th ed., sec. 893.) California early refused to follow it (*Perre v. Castro,* 14 Cal. 519, 76 Am. Dec. 444), and has adhered to the contrary rule.

This court, in *Kelley v. Clark,* 23 Ida. 1, Ann. Cas. 1914C, 65, 129 Pac. 921, citing decisions from these jurisdictions, and as to a tender of redemption on execution sale, adopted the rule that a tender of the amount due under the sale discharged the lien of the mortgage and judgment of foreclosure. However, in that case the tender was before maturity of the period of redemption, and under a statute which prescribes that tender is equivalent to payment. However, Justice Ailshie strongly dissented, and on rehearing the court held that as the plaintiff, successor to the mortgagor, was seeking affirmative relief, he must do equity and pay the amount due.

In *Boise Lumber Co. v. Independent School District,* 36 Ida. 778, 214 Pac. 143, a tender before lien filed was held to discharge a mechanic's lien.

[8–10] New York has held that a tender made to an assignor of a mortgage debt in ignorance of the assignment, discharged the lien of the mortgage, saying only that if payment in ignorance of the assignment would discharge the lien, then tender would also, relying upon *Kortright v. Cady, supra,* that tender was as effectual as payment. (*Hetzell v. Barber,* 6 Hun (N. Y.), 534.) This court has not gone to this extent, and upon sound reasoning such a drastic holding would not be justified under the facts of this case. One must ordinarily tender to one entitled, or with authority, to accept payment or to satisfy the mortgage. (2 Jones on Mortgages, 7th ed., sec. 896.) A place

named for payment is ordinarily construed as a matter of convenience. It has been held that the place of payment relates in strictness to the time mentioned. (2 Jones on Mortgages, 7th ed., sec. 897; *Sharpnell v. Blake,* 2 Eq. Cas. Abr. 603, 22 Eng. Reprint, 506.) As one is under no obligation to leave a note at the appointed place after maturity, one who tenders late and finds his obligation not at the place of payment should seek out the payee to make his payments. (2 Jones on Mortgages, 7th ed., sec. 897.)

What appear to be the principles which should control this phase of the case are recited in R. C. L. and Jones on Mortgages, although not directly supported by authorities cited, to wit:

"It would be more correct, perhaps, to say that a tender may be legally made after the maturity of a debt, but that its only effect is to prevent the acquisition of any further rights on the part of the creditor and not to deprive him of what the law has already conferred on him." (26 R. C. L. pp. 634, 635, sec. 14.)

"If the debtor has no knowledge that the mortgage has been assigned, he may make a tender to the mortgagee and although the mortgage has at the time been in fact assigned, the tender, according to some authorities, would be effectual even to extinguish the lien; but it would seem that if a payment to the mortgagee would not be good a tender would not be good; and that inasmuch as the debtor, not finding the bond or note in the mortgagee's possession, is put upon inquiry as to his authority to receive payment, and is even chargeable with knowledge of fraud if he goes on and makes it, a tender to him when he had not possession of the evidence of the debt would be bad." (2 Jones on Mortgages, 7th ed., sec. 896, p. 461.)

[11] When, simultaneously with the tender, after maturity of the note, defendant received notice that the bank, assignor, did not have the note, and payment was for that reason refused, such tender being made to one who had no authority to receive the money, and plaintiff having by the default already acquired a right to foreclose the mortgage,

the defendant did not thereby acquire, within the intent of C. S., sec. 6635, as a defense, the discharge of the mortgage lien.

To hold otherwise would be to say that the assignor must accept payment, and thereby bind the assignee from whom he has no authority, or refuse and bind him equally, in lack of authority to do so, to a discharge of the security. In other words, although he is not agent to receive payment, he is such to refuse, and in effect discharge the lien of the mortgage,—in effect, destroy the debt, as said in *Perre v. Castro, supra,* "the general effect of losing the security."

This is not a case of one paying in innocence and ignorance to an assignor a debt assigned, and rules applicable to such a case are not in point here.

The findings and conclusions should have been in accord with the principles herein announced. Defendant not having kept his tender good, plaintiff was entitled to judgment for the full amount of the note, accruing interest, attorney's fees, and costs, and the tender not having discharged the lien of the mortgage, was entitled to foreclosure.

The judgment is reversed, and the cause remanded with instructions to the court to make such further findings and conclusions necessary in accordance herewith, and enter judgment accordingly. Costs to appellant.

Wm. E. Lee, C. J., and Budge and T. Bailey Lee, JJ., concur.